IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| CAPITAL TCP, LLC and | ) | |
| TENNESSEE INVESTMENT | ) | |
| GROUP REALTY, LLC, | ) | |
| | ) | |
|     Plaintiffs and | ) | |
|     Counter-Defendants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEW HORIZON MEMPHIS, LLC; | ) | |
| KIMBALL CABANA MEMPHIS, LLC; | ) | |
| and ELI WEINSTEIN, | ) | |
| | ) | |
|     Defendants and | ) | |
|     Counter-Plaintiffs, | ) | |
| | ) | No. 2:07-cv-02157-JPM-dkv |
| | ) | |
| NEW HORIZON MEMPHIS, LLC; | ) | |
| KIMBALL CABANA MEMPHIS, LLC; | ) | |
| and ELI WEINSTEIN, | ) | |
| | ) | |
|     Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GEORGE FAKIRIS, SAIED SOLEIMANI, | ) | |
| and DRAGAN KOCIC, | ) | |
| | ) | |
|     Third-Party Defendants. | ) | |
| | ) | |

**ORDER GRANTING PLAINTIFFS'/COUNTER-DEFENDANTS' AND THIRD-PARTY
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiffs/Counter-Defendants Capital
TCP, LLC and Tennessee Investment Group Realty, LLC and Third-
Party Defendants George Fakiris, Saied Soleimani, and Dragan

Kocic's (collectively "Sellers")[1] Motion for Summary Judgment, filed February 19, 2010. (D.E. 153.) Defendants/Counter-Plaintiffs New Horizon Memphis, LLC, Kimball Cabana Memphis, LLC, and Eli Weinstein (collectively "Purchasers")[2] filed a response in opposition to the Motion on March 15, 2010.[3] (D.E. 156.) Sellers filed a reply brief in support of the Motion on March 31, 2010. (D.E. 149.) The Court held a telephonic hearing on the motion on April 19, 2010. For the following reasons, Sellers' motion is GRANTED.

## I.    Background

On August 3, 2005 Capital TCP, LLC ("Capital") and Tennessee Investment Group Realty, LLC ("TIGR") entered into two contracts with New Horizon Memphis, LLC ("New Horizon") and Kimball Cabana Memphis, LLC ("Kimball Cabana") for the sale of two apartment complexes located in Memphis, Tennessee ("Purchase Agreements"). (Pls.' Statement of Undisputed Facts in Supp. of

---

[1]    Counter-Defendants Fakiris, Soleimani, and Kocic were not parties to the Purchase Agreements. Nevertheless, the Court will, at times, refer to them along with Capital TCP, LLC and Tennessee Investment Group Realty, LLC as "Sellers" for convenience.

[2]    Although Defendant Weinstein executed a promissory note in connection with the instant transactions, he was not a party to the Purchase Agreements. Nevertheless, the Court will, at times, refer to all three Defendants as "Purchasers" for convenience.

[3]    In their response to Sellers' Motion for Summary Judgment, Purchasers' failed to comply with the Local Rules by failing to respond to Sellers' Statement of Undisputed Facts in Support of Motion for Summary Judgment ("Sellers' Statement of Facts") and by failing to cite to precise portions of the record in their response memorandum. See LR 7.2(d)(3). To the extent possible, the Court attempted to construe Purchasers' unnumbered, and largely un-cited, factual assertions contained in their response memorandum to correspond with Sellers' numbered Statement of Facts.

Mot. for Summ. J. ("Sellers' Statement of Facts") (D.E. 153-2)
¶¶ 1-2; see also generally Mot. for Summ. J. Ex. A ("New Horizon
Purchase Agreement") (D.E. 153-2 at 13-40); Mot. for Summ. J.
Ex. B ("Kimball Cabana Purchase Agreement") (D.E. 153-2 at 41-
60).) Collectively, New Horizon and Kimball Cabana agreed to
pay Capital and TIGR a total amount of $43,200,000.00 for the
apartments. (Sellers' Statements of Facts ¶ 3.)

As part of the negotiation process, the Parties included
language in the Purchase Agreements that conditioned the sale of
the apartments on certain "occupancy" requirements. Sellers
represented that 747 units in the New Horizon Apartment Complex
and 212 units in the Kimball Cabana Apartment Complex were
"occupied under a lease or as a hold over tenant under an
expired lease."[4] (See New Horizon Purchase Agreement at Contract
Rider ¶ 2; Kimball Cabana Purchase Agreement at Contract Rider ¶
1.) Rather than providing that a certain number of units would
be occupied as of the closing date, the Purchase Agreements
provided that the occupancy conditions would be satisfied "at
the time [Sellers] ha[ve] given notice." (See New Horizon
Purchase Agreement at Contract Rider ¶ 2; Kimball Cabana
Purchase Agreement at Contract Rider ¶ 1.)

---

[4]    On February 1, 2010 the Court found the occupancy language in the
Purchase Agreements to "encompass those tenants who took physical possession
of a particular unit pursuant to a lease contract or as a holdover tenant,
without regard to any associated rent collection rate." (Order Denying
Defs.'/Counter-Pls.' Mot. for Partial Summ. J. (D.E. 151) at 11.)

On July 17, 2006 William Thomas, Jr., Sellers' attorney, notified Purchasers by letter that the aforementioned occupancy conditions had been satisfied. (Mot. for Summ J. Ex. K (D.E. 153-4 at 19); Mot. for Summ. J. Ex. L (D.E. 153-4 at 20).) Dragan Kocic, Director of Operations for Capital and TIGR, maintains that on July 17, 2006 at least 212 apartment units in the Kimball Cabana Apartment Complex and at least 747 apartment units in the New Horizon Apartment Complex "were occupied under a lease or as a holdover tenant under an expired lease." (Mot. for Summ. J. Ex. M ("Kocic Decl.") (D.E. 153-2 at 21-22) ¶ 3.)

The Purchase Agreements contained several other provisions related to the occupancy conditions. The contract riders to the Purchase Agreements contained a thirty-day due diligence period that specifically allowed Purchasers to inspect the premises and/or leasing documentation to "verify the occupancy condition[s]." (New Horizon Purchase Agreement at Contract Rider ¶ 2; Kimball Cabana Purchase Agreement at Contract Rider ¶ 1.) The Purchase Agreements also provided that "Seller[s] shall allow Purchaser[s] or Purchaser[s'] representatives access to the Premises, the Leases and other documents required to be delivered under [these Purchase Agreements] upon reasonable notice at reasonable times." (New Horizon Purchase Agreement § 9.06; Kimball Cabana Purchase Agreement § 9.06.)

On October 20, 2006 the Parties executed two documents that amended the Purchase Agreements ("Amendments").[5]  (See Mot. for Summ. J. Ex. T (D.E. 153-5 at 11-12); Mot. for Summ. J. Ex. U (D.E. 153-5 at 14-15).)  In the Amendments, Purchasers acknowledged that "the occupancy and rental rates have been accomplished as shown in the rent roll provided by [Sellers]." (Mot. for Summ. J. Ex. T; Mot. for Summ. J. Ex. U.)  Despite this acknowledgement, Simcha Shain and Defendant Eli Weinstein, both managing members of New Horizon and Kimball Cabana, concede that no attempts were ever made by Purchasers or their representatives to review the "rent rolls," verify the occupancy conditions, or otherwise perform any due diligence with regard to the transaction.  (Mot. for Summ. J. Ex. N ("Shain Dep.") (D.E. 153-4 at 23-33) at 80-81, 91-92, 110-12; Mot. for Summ. J. Ex. P ("Purchasers' Answers to Sellers' First Set of Interrogs.") (D.E. 153-4 at 37-40) at Interrog. No. 17; Mot. for Summ. J. Ex. Q ("Weinstein Dep.") (D.E. 153-4 at 41-48) at 76-77, 124-25, 311.)

The transaction proceeded to closing on November 30, 2006. (Sellers' Statement of Facts ¶ 10.)  At closing, New Horizon and Kimball Cabana were unable to pay the full purchase price.  (Id. ¶ 4.)  Rather than terminating the transaction, Capital and TIGR

---

[5]     The Purchase Agreements were amended in order to extend the closing date.  (Sellers' Statement of Facts ¶¶ 26 & 28.)

accepted $37,578,208.00 from New Horizon and Kimball Cabana and a promissory note executed by Weinstein for $5,621,792.00, the remaining portion of the purchase price. (Id.; see also Mot. for Summ. J. Ex. C ("Weinstein Promissory Note") (D.E. 153-2 at 63).)  With the exception of one payment of $500,000.00 made on January 17, 2007, Weinstein has failed to satisfy his obligation under the Promissory Note.  (Sellers' Statement of Facts ¶ 5.)

On January 18, 2007 Capital and TIGR filed a Complaint for breach of contract alleging New Horizon and Kimball Cabana failed to timely pay amounts owed under the Purchase Agreements and that Weinstein defaulted on the Promissory Note.[6]  (Compl. (D.E. 1-1) ¶ 17.)  On April 11, 2007 Purchasers filed an Answer and Counterclaim denying liability and asserting that they were fraudulently induced into entering the transaction based upon Sellers' alleged false representations regarding the occupancy levels of the apartments.  (Answer and Countercl. (D.E. 14) ¶ 6.)  With leave of Court, Purchasers filed an Amended Answer and Counterclaim on April 17, 2009 which added Third-Party Defendants Fakiris, Soleimani, and Kocic in their individual capacities.[7]  (D.E. 90.)  Sellers now move the Court for Summary Judgment as to all claims.

---

[6]     With leave of Court, Sellers filed an Amended Complaint on May 30, 2007.  (D.E. 13.)

[7]     Fakiris and Soleimani are managing members of Capital and TIGR while Kocic was, at all times relevant to the instant case, Director of Operations for Capital and TIGR.  (Answer and Am. Countercl. (D.E. 90) ¶¶ 4-6.)

## II.  **Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate.  Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact exists for trial "if the evidence [presented by the

nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52.

## III. <u>Analysis</u>

Sellers contend they are entitled to summary judgment as to Purchasers' fraudulent misrepresentation counterclaim and third-party claim and as to Sellers' breach of contract claim.  The Court will address each contention in turn.

### A.   **Purchasers' Counterclaim and Third-Party Claim**

Sellers contend that they are entitled to summary judgment as to Purchasers' counterclaim and third-party claim based on the contractual limitations period set forth in the Purchase Agreements.  Purchasers argue, however, that the contractual limitations period is unenforceable as a matter of law. Alternatively, Purchasers argue that even if the Court finds the contractual limitations period valid and enforceable against New Horizon and Kimball Cabana, Weinstein's counterclaim and third-party claim are not barred because Weinstein was not a party to the Purchase Agreements.

1.   **New Horizon and Kimball Cabana's counterclaim and third-party claim**

Section 16.01 of the New Horizon Purchase Agreement

provides:

> Except as otherwise provided in this Agreement, no representations, warranties, covenants or other obligations of Seller[s] set forth in this Agreement shall survive the Closing, and no action based thereon shall be commenced after the Closing.   The representations, warranties, covenants and other obligations set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Schedule D . . . and no action based thereon shall be commenced after the Limitation Date.

(New Horizon Purchase Agreement § 16.01.)  The Kimball Cabana

Purchase Agreement contains a similar provision:

> Except as otherwise provided in this Contract, no representations, warranties, covenants or other obligations of Seller[s] set forth in this Contract shall survive the Closing, and no action based thereon shall be commenced after the Closing.   The representations, warranties, covenants and other obligations set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Schedule D . . . and no action based thereon shall be commenced after the Limitation Date.

(Kimball Cabana Purchase Agreement § 16.01.)  Both Purchase

Agreements contain the following provision located at Schedule

D, respectively: "Limitation Date for action based on Seller[s']

surviving representations and other obligations (§16.01): see

rider."  (New Horizon Purchase Agreement at Schedule D ¶ 18;

Kimball Cabana Purchase Agreement at Schedule D ¶ 18.)  The

contract riders to both Purchase Agreements provide: "All

representations and warranties contained in this agreement shall be deemed to be made as of the date hereof and again, on, as of, and at the closing date to survive for 90 days . . . ." (New Horizon Purchase Agreement at Contract Rider ¶ 10; Kimball Cabana Purchase Agreement at Contract Rider ¶ 6.) The Purchase Agreements thus purport to displace the traditional six-year statute of limitations governing contract actions, see Tenn. Code Ann. 28-3-109(3), with a ninety-day contractual limitations period.

Under Tennessee law, "it is a well[-]established general rule that in the absence of a prohibitory statute, a contract provision is valid which limits the time for bringing suit, if a reasonable period of time is provided, and that the general statutes of limitations are not prohibitory of such contractual provisions as between private individuals or corporations." State v. Evans, 334 S.W.2d 337, 342 (Tenn. Ct. App. 1959); see also Hill v. Home Ins. Co., 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938) ("Contractual limitations . . . are valid and enforceable."). Purchasers do not cite, nor is the Court aware of, any statute that prohibits the modification of Tennessee Code Annotated section 28-3-109. Cf. Tenn. Code Ann. § 66-32-119 (limiting parties ability to reduce the statutory limitations period under a time share contract). Thus, the ninety-day contractual limitations period set forth in the

Purchase Agreements is valid and enforceable "as long as 'a reasonable period of time is provided [for bringing suit].'" See United States v. Republic Ins. Co., 775 F.2d 156, 160 (6th Cir. 1985) (quoting Evans, 334 S.W.2d at 342) (alteration in original).

In their response to Sellers' Motion, Purchasers do not argue that the ninety-day contractual limitations period is either *per se* unreasonable or unreasonable under the instant facts.  Rather, Purchasers argue that "the fraud of Sellers vitiates and avoids the the [sic] statute of limitations contained in the contracts of sale." (Defs.'/Counter-Pls.' Mem. in Opp'n to Pls.'s/Counter-Defs.' Mot. for Summ. J. ("Purchasers' Resp.") at 7 (citing N.Y. Life Ins. Co. v. Nashville Trust Co., 292 S.W.2d 749 (Tenn. 1956)).)  The Court construes Purchasers' argument as asserting that the contractual limitations period should be tolled due to fraudulent concealment on the part of Sellers.  Purchasers' argument, however, is without merit because they cannot establish the essential elements required to toll the limitations period based on fraudulent concealment.

In order to toll a statute of limitations based on fraudulent concealment, a plaintiff must prove the following:

> (1)  that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so;

    (2)  the plaintiff could not have discovered the
        cause of action despite exercising reasonable
        care and diligence;
    (3)  the defendant was aware of the wrong; and
    (4)  concealment of material information from the
        plaintiff.

Brandt v. McCord, 281 S.W.3d 394, 405 (Tenn. Ct. App. 2008)

(citing Shadrick v. Coker, 963 S.W.2d 726, 735 (Tenn. 1998)).

The second element of fraudulent concealment is merely a

restatement of the discovery rule, "which applies in cases where

the breach of contract is inherently undiscoverable."  Goot v.

Metro. Gov't of Nashville & Davidson County, No. M2003-02013-

COA-R3-CV, 2005 WL 3031638, at *11 (Tenn. Ct. App. Nov. 9,

2005).  "The inherently undiscoverable requirement is met when

the injured party is unlikely to discover the wrong during the

limitations period despite due diligence."  Id. at 11 n.31.

    In the instant case, Purchasers had sufficient information

to discover any discrepancies in the occupancy levels during the

contractual limitations period.  Sellers submitted uncontested

evidence that Purchasers and/or their agents "were in possession

of all computer information, software, lease files, copies of

money orders and/or checks for rental payments, and all other

information relating to the apartment complexes upon taking

possession of the properties" after closing.  (Sellers'

Statement of Facts ¶ 40.)  Moreover, Purchasers concede that the

alleged occupancy discrepancies were discovered "in the latter

part of January to the first part of February 2007."

(Purchasers' Answers to Sellers' First Set of Interrogs. at Interrog. No. 16.)  Having discovered the alleged occupancy discrepancies within the contractual limitations period, which expired on February 28, 2007, Purchasers cannot establish the essential element that they "*could not* have discovered the cause of action despite exercising reasonable care and diligence." See Brandt, 281 S.W.3d at 405 (emphasis added).

Because Purchasers do not argue that the contractual limitations period is unreasonable, and having found that Purchasers failed to prove an essential element required to establish fraudulent concealment, the Court finds the contractual limitations period in the Purchase Agreements valid and enforceable.  Under the contractual limitations provision, Kimball Cabana and New Horizon had ninety days after closing to bring an action arising from a representation or warranty in the Purchase Agreements.  The transaction at issue closed on November 30, 2006, (Sellers' Statement of Facts ¶ 10); therefore the contractual limitations period expired on February 28, 2007. New Horizon and Kimball Cabana, however, did not raise their counterclaim and third-party claim until April 11, 2007 and April 17, 2009 respectively.  (See First Answer and Countercl. (D.E. 7) ¶¶ 4-7; Third Answer and Amended Countercl. (D.E. 90) ¶¶ 7-10.)  New Horizon and Kimball Cabana's counterclaim and third-party claim are therefore barred by the contractual

limitations period and Sellers' Motion for Summary Judgment as
to New Horizon and Kimball Cabana's counterclaim and third-party
claim is hereby GRANTED.

### 2.  **Weinstein's counterclaim and third-party claim**

Purchasers argue in the alternative that even if the Court
finds the ninety-day contractual limitations period valid and
enforceable against New Horizon and Kimball Cabana, Weinstein's
counterclaim and third-party claim are not barred by the
limitations period because he was not a party to the Purchase
Agreements.  (Purchasers' Resp. at 8.)  It is undisputed that
Weinstein was not a party to the Purchase Agreements.  It is
also undisputed that Weinstein's counterclaim and third-party
claim are based on provisions in the Purchase Agreements that
conditioned the sale of the apartment complexes on certain
"occupancy requirements."  Thus, in order for Weinstein to have
standing to enforce the occupancy representations in the
Purchase Agreements, Weinstein must qualify as a third-party
beneficiary to the Purchase Agreements.  See Benton v.
Vanderbilt Univ., 137 S.W.3d 614, 618 (Tenn. 2004) ("[A] third-
party's rights depend upon and are measured by the terms of the
contract." (citation and internal quotation marks omitted)).

It is not necessary for the Court to analyze whether
Weinstein is a third-party beneficiary to the Purchase
Agreements for the following reasons: (1) If Weinstein is not a

14

third-party beneficiary, he has no standing to enforce the occupancy representations in the Purchase Agreements; and (2) if Weinstein is a third-party beneficiary, Weinstein is barred from bringing a counterclaim or third-party claim under the contractual limitations period discussed *supra*.  See id. ("Before [a] beneficiary may accept the benefits of [a] contract, he must accept all of its implied, as well as express, obligations.  [In other words], if the beneficiary accepts, he adopts the bad as well as the good, the burden as well as the benefit." (citation and internal quotation marks omitted)). Under either approach, Weinstein's counterclaim and third-party claim fail as a matter of law.  Sellers' Motion for Summary Judgment is therefore GRANTED as to Weinstein's counterclaims and third-party claims.[8]

## B.  Sellers' Breach of Contract Claim

Sellers also move the Court for judgment as a matter of law with regard to Sellers' breach of contract claim.  Purchasers, however, contend that Sellers are not entitled to summary judgment because Purchasers' obligations under the Purchase Agreements and the Promissory Note were relieved in light of their assertion that Sellers fraudulently misrepresented the occupancy levels of the apartment complexes.

---

[8]     Having found that the contractual limitations period bars Purchasers' counterclaim and third-party claim, the Court does not reach Sellers' additional grounds for summary judgment as to Purchasers' counterclaim and third-party claim.

### 1. Purchasers' fraudulent misrepresentation affirmative defense

In order to prove the affirmative defense of fraudulent misrepresentation, Purchasers must show that:

1) [Sellers] made a representation of an existing or past fact;
2) the representation was false when made;
3) the representation was in regard to a material fact;
4) the false representation was made either knowingly or without belief in its truth or recklessly;
5) [Purchasers] reasonably relied on the misrepresented material fact; and
6) [Purchasers] suffered damage as a result of the misrepresentation.

See Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (citing Metro. Gov't of Nashville and Davidson County v. McKinney, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)). Sellers argue that Purchasers' affirmative defense of fraudulent misrepresentation fails as a matter of law because Purchasers did not reasonably rely on Sellers' alleged misrepresentations.

As noted by the Tennessee Court of Appeals, "[j]ustifiable reliance is an essential element of a claim for fraudulent misrepresentation." Goodall v. Akers, No. M2008-01608-COA-R3-CV, 2009 WL 528784, at *6 (Tenn. Ct. App. March 3, 2009). "The party alleging fraudulent misrepresentation has the burden of proving every element of fraud." See Homestead Group, LLC v. Bank of Tenn., 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009) (citation omitted). "Fraud is never presumed, and where it is

alleged facts sustaining it must be *clearly* made out." Id.
(emphasis added) (citation omitted).

In determining the reasonableness of a party's reliance,
relevant factors include but are not limited to:

(1)   the [party's] business experience and
      sophistication;
(2)   the existence of a longstanding business or
      personal relationship between the parties;
(3)   the availability of relevant information;
(4)   the existence of a fiduciary relationship;
(5)   the concealment of the fraud;
(6)   the opportunity to discover the fraud;
(7)   which party initiated the transaction; and
(8)   the specificity of the misrepresentation.

Goodall, 2009 WL 528784, at *6 (citations omitted).  Applying

these factors to the instant case, the Court finds that the

undisputed material facts demonstrate that Purchasers' reliance

on the occupancy representations was unreasonable as a matter of

law.  There is no evidence in the record to indicate that

Purchasers were inexperienced or unsophisticated buyers.  To the

contrary, Sellers submitted uncontested evidence that both

Purchasers and Sellers were "sophisticated parties who had

previously bought and sold properties costing millions of

dollars."[9] (Mot. for Summ. J. Ex. M ("Kocic Decl.") (D.E. 153-4

at 21-22) ¶ 4.)  Sellers also submitted uncontested evidence

that (1) the transaction in question was an arms-length

---

[9]      Furthermore, it is undisputed that Purchasers were represented by
counsel throughout the transaction, thus reinforcing the finding that
Purchasers should not be treated as an unsophisticated party.  (See Sellers'
Statement of Facts at 10 n.4.)

transaction, (<u>id.</u>), (2) there was no longstanding business, personal, or fiduciary relationship that existed between the parties, (<u>id.</u>), and (3) all relevant information pertaining to the occupancy requirements was available to Purchasers before and after closing, (Shain Dep. at 80-81, 91-92, 110-12; Sellers' Statement of Facts ¶ 40).

Most importantly, Purchasers had ample opportunity to discover the alleged fraud yet failed to make any attempt to do so. The Purchase Agreements provided that "Seller[s] shall allow Purchaser[s] or Purchaser[s'] representatives access to the Premises, the Leases and other documents required to be delivered under [these Purchase Agreements] upon reasonable notice at reasonable times." (New Horizon Purchase Agreement § 9.06; Kimball Cabana Purchase Agreement § 9.06.) Purchasers submitted no evidence that Sellers prohibited or otherwise limited access to the premises or leasing documentation. Additionally, the riders to the Purchase Agreements contained a thirty-day due diligence period that specifically allowed Purchasers to inspect the premises and/or leasing documentation to "verify the occupancy condition[s]." (New Horizon Purchase Agreement at Contract Rider ¶ 2; Kimball Cabana Purchase Agreement at Contract Rider ¶ 1.) Despite this contractually-provided-for opportunity to verify the occupancy representations, Purchasers conceded that no attempt was ever

18

made to review the documentation containing leasing figures,
verify the occupancy levels represented by Sellers, or otherwise
perform any due diligence.[10]  (Purchasers' Answers to Sellers'
First Set of Interrogs. at Interrog. No. 17; Shain Dep. at 80-
81, 91-92, 110-12; Weinstein Dep. at 76-77, 124-25, 311.)

　　　Although not treated as a separate factor under the
reasonable reliance analysis, Tennessee courts have placed
particular emphasis on the following guiding principle:

> [W]here the means of information are at hand and
> equally accessible to both parties so that, with
> ordinary prudence or diligence, they might rely
> on their own judgment, generally they must be
> presumed to have done so, or, if they have not
> informed themselves, they must abide the
> consequences of their own inattention and
> carelessness.

Goodall, 2009 WL 528784, at *7 (citing McNeil v. Nofal, 185
S.W.3d 402, 409-10 (Tenn. Ct. App. 2005); Pakrul v. Barnes, 631
S.W.2d 436, 438 (Tenn. Ct. App. 1981)).

　　　As discussed *supra*, the record contains no evidence to
indicate that Purchasers were in a position of unequal
bargaining power.[11]  Furthermore, Purchasers had the means to

---

[10]　　In addition, representatives from the management company hired by
Purchasers "mentioned several times [to representatives of Purchasers] that
it would be a good idea" to perform some form of due diligence.  (Sellers'
Mot. for Summ. J. Ex. R ("Ringel Dep.") (D.E. 153-5 at 1-7) at 58-59.)
Despite this recommendation, Purchasers told representatives from the
management company that "it wasn't necessary."  (Id. at 59.)

[11]　　Although Purchasers argue that "the parties were certainly not dealing
on equal terms," (Purchasers' Resp. at 13), the Court found no evidence in
the record to support this contention.  See Nix v. O'Malley, 160 F.3d 343,
347 (6th Cir. 1998) (unsworn allegations in a brief are insufficient to
create a factual dispute on a motion for summary judgment).

obtain the information needed to discover any alleged discrepancies in the occupancy levels, yet they admit that they made no attempt to verify Sellers' representations. Instead of exercising ordinary diligence, Purchasers acted with "blind faith" on Sellers' representations. (<u>See</u> Purchasers' Answers to Sellers' First Set of Interrogs. at Interogg. No. 17 ("There was no diligence performed inasmuch as [Purchasers] trusted [Sellers] to provide true and correct information about the occupancy . . . of the apartments.").) Blind faith, however, is insufficient to create an issue of material fact. <u>See</u> <u>Homestead Group</u>, 307 S.W.3d at 752 ("Justifiable reliance is not blind faith and there is no duty to disclose a fact if ordinary diligence would have revealed it."). Although the reasonableness of a party's reliance on an alleged misrepresentation "is *generally* a question of fact inappropriate for summary judgment,"[12] <u>see</u> <u>City State Bank v. Dean Witter Reynolds</u>, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996) (emphasis added) (citations omitted), the Court finds that under the facts of this case, a reasonable jury could not conclude that

---

[12] While factually distinguishable from the case at bar, see <u>Annaco, Inc. v. Corbin</u>, No. 02A01-9804-CH-00111, 1998 WL 929637, at *4-5 (Tenn. Ct. App. Dec. 31, 1998), and <u>Rural Development, LLC v. Tucker</u>, No.M2008-00172-COA-R3-CV, 2009 WL 112541, at *6-9 (Tenn. Ct. App. Jan. 14, 2009), for examples of cases where Tennessee courts found summary judgment appropriate as to fraudulent misrepresentation claims.

Purchasers reasonably relied upon Sellers' alleged misrepresentation of the occupancy conditions.[13]

### 2. Sellers' Breach of Contract Claim

Under Tennessee law, the essential elements of a breach of contract claim "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (citations omitted). Purchasers do not dispute the existence of an enforceable contract or that they have failed to pay the balance due under the Purchase Agreements and Promissory Note. Purchasers' only argument against liability is their affirmative defense of fraudulent misrepresentation. Having found that Sellers are entitled to summary judgment as to Purchasers' fraudulent misrepresentation affirmative defense, the Court finds that New Horizon and Kimball Cabana breached the Purchase Agreements and Eli Weinstein breached the Promissory Note. Sellers' Motion for Summary Judgment is hereby GRANTED as it relates to Sellers' breach of contract claim.

---

[13]     Having found that the undisputed material evidence demonstrates that Purchasers' reliance on the occupancy representations was unreasonable as a matter of law, the Court declines to analyze whether Sellers misrepresented the occupancy levels of the apartment complexes.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.  Purchasers' Counterclaims and Third-Party claims are hereby DISMISSED and judgment shall be entered in favor of Capital TCP, LLC and Tennessee Investment Group Realty, LLC and against New Horizon Memphis, LLC, Kimball Cabana Memphis, LLC, and Eli Weinstein, jointly and severally, in the amount of $5,121,792.00.  The Parties are DIRECTED to file, within thirty (30) days of this Order, such affidavits and memoranda of fact and law as they may deem necessary to establish the appropriate rate of interest to be applied to the judgment and any award for attorney's fees and litigation expenses incurred by Sellers in connection with the underlying transaction.

So ORDERED this 9th day of July, 2010.

/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE